The next case is Friedman v. JPMorgan Chase. Thank you. May I proceed? No, I'm sorry. You may proceed. Good morning, Your Honors. Lance Gotthoffer for Plaintiff Appellants. This appeal brings the Court back into the 20-year criminal alliance between America's biggest bank and America's biggest crook. In 2014, after many years of publicly stating we had nothing to do with Madoff, JPMorgan Chase entered into a global settlement agreement with the United States government and with the Madoff trustee and with some private plaintiffs, in which it paid a total of $3 billion, admitting to facts that constituted what the United States government charged as felonious violations, willful violations, of the Bank Secrecy Act. And in addition, giving a statement of facts that laid out the 20-year relationship between the parties, including how JPMorgan profited greatly from the amounts of money that Madoff and some of his collaborators kept in the bank and how JPMorgan actually took steps to further what Madoff was doing. And Madoff stated publicly that senior people at JPMorgan Chase knew exactly what he, Madoff, was doing. We brought suit, Your Honors, for violation of Section 20 of the Securities Exchange Act, the control person provision, saying that if you look at all the facts, there was a control relationship between JPMorgan, which was Madoff's lender, which was Madoff's clearing bank through which all of the transactions at issue in his $60 billion fraud went, and we sought to hold JPMorgan liable as a control person. The court below dismissed the complaint on two analytically separate grounds. One was statute of limitations. The other is what I'd globally call the merits, but I think that could be distilled to a statement that the lower court did not believe it was plausible that a bank like JPMorgan Chase would involve itself in a fraudulent scheme with Mr. Madoff. The district court dismissed this because your clients were all net winners, not losers. Your Honor, let me speak to that. No, actually, with due respect, the district court did not rule on damages reserved to that in its opinion, but what it said in the oral argument, and correctly so, was that even if plaintiffs are net winners, and I'll come back to that rather misleading phrase in a moment, they still deposited money with Madoff in some instances for 20 years or more and are entitled to payment for the loss of beneficial use of that money. And that of itself, the district court said, precluded it from dismissing on damages grounds, on the grounds that plaintiffs are net winners. Right, because he said you want a piece of fictitious profits that actually existed. He did speak to the fictitious profit issue, and I'll respond, but he also said, but I can't dismiss on damages because plaintiffs do have damages for the lost beneficial use of the money, not for a share of the profits, but for the lost beneficial use of the money, and as long as there is any damaged ground stated in the complaint, dismissal under 12b-6 would be inappropriate. Now, on the fictitious profit point, I think we have to point out, Your Honor, and it was argued to this court by the Madoff trustee, net winners, as the term is used, still have a claim against the Madoff estate. It is, however, in effect, a subordinated claim. First, all of the net losers are brought up to zero, if you will, and then the net winners, who start at zero, and the net losers will collect any monies remaining in pari materia. But there is no doubt, the trustee said, the net winners are general creditors of the Madoff estate. Now, this was all done, as you know, in the context of a SIPA liquidation. As far as I know, J.P. Morgan is not in a SIPA liquidation. It's in very good financial condition, and thus, just the same as if you had a guarantor, the primary obligor could not be found liable in bankruptcy because he went bankrupt, but that doesn't take the guarantor off the hook in a separate non-bankruptcy proceeding. So you agree that the claims that your clients raise are distinct from the claims of the net losers? Yes, sir. The proof would be different, your theories are different, and the measurement of recovery is different. That's exactly right, Your Honor. How is it, then, that you claim that you somehow fall within the protections of the Shapiro class so that you're entitled to tolling with regard to the statute of limitations? Because when the Shapiro class action was commenced, it did not use the term net winners or net losers. I understand that, but the Shapiro class clearly was on an aiding and abetting theory, on theories of breach of fiduciary duty, on other state law-type claims. It wasn't on control person liability. The proof would be entirely different. So I don't know whether Judge Cole was right or wrong. He said they had to be exactly the same. I don't know that they have to be exactly the same. But it would seem to me that they have to be similar enough so that you have an arguable claim that you're protected by the Shapiro class action for tolling purposes. You're absolutely right. Assuming that you're going to get tolling after CalPERS is decided. Yes. Assuming that for the moment, two decisions from this Court, Cullen, Margiata, and Bennisfield, talk to this issue. And I think, Your Honor, when I said the two claims are distinct, I was speaking on the damages level. Well, I understand that, but the damages is part of it, too, because the proof of the claims is really quite distinct. The claims are against J.P. Morgan, and in essence, they argue that Morgan knew about this and should have terminated the relationship. Those are your control allegations. They're not really that J.P. Morgan was somehow in a chain of command above Madoff. Morgan knew about Madoff's fraud, knew about Madoff's Ponzi manipulations, and therefore should have done something sooner. That's your theory. But that's completely different than the theory of the net losers who are all saying that it's a Ponzi scheme. Madoff was paying from one pocket to another. That's not your theory against J.P. Morgan. Your Honor, the allegations in the complaint are really the factual allegations taken in large part from the Shapiro complaint. In point of fact, as you know, on aiding and abetting in common law terms, you have to show that the defendant knew of the wrongful action and took affirmative steps to further it. In this instance, Your Honor, the parties are the same, the witnesses are the same. The relationship between Madoff and J.P. Morgan. You sued certain people at J.P. Morgan who have nothing to do with the Madoff net loser claims. Oh, Your Honor. How does CASA have anything to do with proving a net loser claim? Because the net loser claims, Your Honor, included aiding and abetting, and Mr. CASA was the account manager who, at least as we've pled in the complaint. He is not named in the Shapiro complaint. Okay. That's not part of their theory. There's no aiding and abetting theory against J.P. Morgan in the Shapiro complaint, is there? There was an aiding and abetting claim. Against J.P. Morgan? Against J.P. Morgan. I believe so, yes. J.P. Morgan settled on that claim? It settled the case. On the net losers? It settled the case, yes. On the net losers? It settled the net loser case, the Shapiro case, yes. I believe for, well, I can check the exact amount, but I believe it was hundreds of millions of dollars. May I? I know your red light is on. I have a quick question for you. Can you identify any material ways in which the complaint at issue here that Judge Codall dismissed is different from the complaint in DUSEC whose dismissal the 11th Circuit affirmed, apart from, obviously, you have different named plaintiffs? In Canberra, Your Honor, no. The substantive allegations are, if not identical, very, very close to that, and I would not try to tell the Court otherwise. Thank you. Thank you. You have reserved some time for your question. Thank you. Thank you, Your Honor. We have from J.P. Morgan. Good morning, and may it please the Court. John Savarese from Wachtell, Lipton, Rosen, and Katz Counsel to appellee J.P. Morgan Chase. Judge Codall wrote a comprehensive and thoroughly well-reasoned opinion that I think carefully considered each and every one of the appellant's arguments and rejected them. And exactly as Judge Carney just pointed out a moment ago, the identical claims brought by the same plaintiffs, by the same law firm in the Middle District of Florida, were also rejected after careful consideration by Judge Steele and then affirmed on appeal by the 11th Circuit. And I would respectfully submit that this Court should likewise affirm Judge Codall's careful decision dismissing this case. This case has nothing to do with the proposition that they are members of the earlier class. They simply are not members of the earlier class, and I think Judge Wesley is right about that. Here, the untimely Friedman class action complaint was brought by net winner plaintiffs who were never members of the earlier Shapiro class, and it contains an array of entirely new claims that were never made in the Shapiro case. So, for example, and most saliently, the Shapiro case, the earlier case, is all about aiding and abetting breaches of state law. There is not a syllable about control person liability under the federal securities laws, and there is not a single federal claim brought. No RICO claim, no securities law claim. So it's all about state law and aiding and abetting. And we know that aiding and abetting as a matter of federal law is viewed very differently from control person liability. That's the famous Supreme Court case, the Central Bank of Denver case. There is also no allegation in the earlier complaint that J.P. Morgan somehow directed the fraud or ran the fraud in the way that my adversary says, and indeed, exactly as Judge Wesley pointed out a moment ago also, they name two new defendants who were never defendants in the earlier action. So American pipe tolling does not do them any good. Even if the Supreme Court were to somehow decide that this court has been wrong since IndyMac to hold that American pipe tolling does not apply to a statute of repose, that would simply do them no good whatsoever. Judge Kodal was absolutely right that they are not helped by American pipe tolling because they were never members of that earlier class. And let me explain four events that occurred very publicly in this courthouse that make that crystal clear. The distinction is in Shapiro, they brought net loser claims for $19 billion. In the present case, the Friedman net winner case, they are seeking damages of $64.8 billion. Those two numbers have had real significance in this very courthouse since 2011. And let me tell you exactly why. Number one, in 2010, the bankruptcy court in the Southern District of New York ruled that the trustee could define the net equity owed to Madoff investors as only including their net investment. That is the cash they gave to Madoff, net of any monies that they got out. And so to have capital invested in the Madoff scheme when it collapsed, you had to be a net loser. You had to have money that was still in the account. The bankruptcy court expressly rejected the measure of damages that my friend wants to advance in my case. And that is they rejected the so-called last statement method, which is the method that says we get everything that was in these utterly fictitious, utterly false last statements that Madoff sent to us before the collapse that totaled this utterly arbitrary number of $64.8 billion. Secondly, in August of 2011, this court affirmed the bankruptcy court. And this court was crystal clear that the net investment method, the net loser method, was appropriate. And the court was also quite clear that it would be, quote, absurd to give legal effect to, quote, Madoff's machinations, close quote, by using the last statement method, which is the very method my friend wants to advance in this case. The Second Circuit rejected that. It's based on profits that didn't really exist, isn't it? They did not exist at all. They were thoroughly made up, as this court has over and over again recognized. And so what my friend is trying to do is to give legal force and effect, and indeed to insist that J.P. Morgan must give legal force and effect, to completely made up numbers that were arbitrarily and fictitiously invented by Madoff. This court at the bankruptcy court level, the district court level, and here in the Second Circuit has over and over again rejected that. I know that they're not going to get it from the Madoff estate, but they want to get the money from you, from J.P. Morgan. Yes, by giving effect to fictitious numbers that Madoff made up, which this court has over and over again said is not a valid measure of damages. However, I'm not here really to argue so much about the measure of damages. I'm making these points to your honors to show how clear it was when the Shapiro complaint was filed in 2011, that in this courthouse people understood that the $19 billion number was the net loser number. That's the number and the only number that the Shapiro plaintiffs advance in their complaint. And that by contrast, the $64.8 billion number, the net winner number, which the Second Circuit had rejected, was never mentioned in Shapiro. They don't ask for, they don't advance the last statement method. They don't ask for $64.8 billion. It is only the untimely Friedman complaint that seeks that $64.8 billion. And it does so because they are acting on behalf of the net winners. But it was clear throughout the Shapiro case, it was clear to the trustee, it was clear to me, and it was clear to the very experienced plaintiffs' counsel who were advancing the Shapiro case, that we were not dealing there with net winners. We were only dealing there with net losers and their claim for $19 billion. That's why Judge Codal was absolutely right in ruling below that by 2010 and 2011, as a result of this series of rulings, the Friedman plaintiffs were on notice that their claims were not similarly situated to the net loser plaintiffs. And that's why they couldn't have thought that the Shapiro claim represented them or that they were included in that class. And indeed, that's precisely why Judge McMahon, who was well aware of this litigation history when she was overseeing the settlement hearing in Shapiro, was so shocked that the net winners could even claim to have thought that they had been represented in the Shapiro class. That's why she dismissed their objection and their opt-outs as a nullity. She told them, you have nothing to opt out of and you have nothing to object to. You're not in this case. There's a further reason why American pipe tolling is not available to these plaintiffs, and that is because Judge Codal correctly observed that it's only available when the earlier filed class action involved exactly the same cause of action subsequently asserted. Let me briefly address my friend's reliance on Cullen and Benfield. Let's put aside for a moment that, with respect, I think both Cullen and Benfield are certainly in tension with the holding of American pipe by the Supreme Court and the clarification two years later by the Supreme Court in Johnson v. Railway Express Agency, a 1975 case in which they said the logic of American pipe depended upon the fact that those were exactly the same claims, that the earlier class claims and the subsequent claims at issue in American pipe were identical. That's what the Supreme Court said. Wasn't the characterization, though, dependent on the notion that the defendant would have had adequate notice, and so there doesn't really have to be a perfect overlap? Well, that is not what the Supreme Court has said. The Supreme Court has said there has to be perfect overlap. That was what was true in American pipe. That's what the Supreme Court said in Johnson. And, indeed, yesterday, where the Kalpers case was being argued before the Supreme Court, I was in the courtroom to watch. The petitioners, the people who you would think are on the side of my friend here, actually advanced the argument, no, it has to be precisely the same. Our claims are precisely the same as the earlier claims. That's why we come within American pipe. And, indeed, Justice Breyer at one point asked point blank the question of petitioners' counsel, what would be your view if you had new claims brought subsequently? And the answer is important. I'll read it. It's from page 12 of yesterday's transcript before the court. Mr. Goldstein, you're not allowed to do that under either our rule or respondents' rule. It has to be precisely the same. That is a direct quote. Now, let's take Cullen and Benfield at face value for a moment, and these are prior decisions of this court that seem to suggest that, well, they can be a little bit different. Even accepting those decisions at face value, I think what is critical is, and this was really central to what the court was doing in Cullen v. Margiotto, that while there were some differences between the later filed civil RICO claim there and the earlier filed state law claims, those differences, in the words of the Cullen court, were, quote, entirely peripheral, close quote. And that's from 811F2nd at 720. Here, however, the earlier state law claims in Shapiro, as I mentioned at the outset, involve aiding and abetting. You see that clearly in counts 2, 3, and 5 of the Shapiro complaint. There was no claim that J.P. Morgan controlled and directed BLMIS. Winding up, your time has expired. Yes, I was just going to say that the difference, therefore, is not peripheral. The difference is fundamental, and we know that because you literally can't bring an aiding and abetting federal securities law claim. Let me ask you this. There's some debate about that, but would we need to reach any of those issues if we affirmed Judge Kotel's determination that the control person claim was inadequately pled? You would not need to reach any of them. We set aside the culpability issue because he made two separate findings there. Right. We said, look, America pipes up open for debate. Some of it's going to be solved, some of it's not yet. But in any event, Kotel got it right with regard to control person. That would terminate the case, would it not? It absolutely would. You're completely right. It is an entirely independent, thoroughly adequate basis, and I do believe emphatically that Judge Kotel got it right. There is no plausible or cogent allegation in the complaint that J.P. Morgan, one of the largest banks in the world, literally actually day-to-day controlled Bernie Madoff's Ponzi scheme. I think it is a preposterous claim. Sorry? Knowledge is not enough. Well, first of all, I don't think they established knowledge, but it's not enough. No. Control requires far more than mere knowledge, and it requires far more than mere influence. Thank you. Thank you. Counsel, you reserve three minutes for rebuttal. Thank you, Your Honor. The question of the class definition, the class definition in Shapiro was changed. At the time that the class was certified or provisionally certified, the words net losers for the first time came in to the class definition, and that was what gave us the realization that this was not meant to be an omnibus class, and Judge McMahon acknowledged on the record, and it's cited in our briefs. That's different, and you may have a claim against J.P. Morgan on behalf of your clients. That's something I'm not ruling on. Go out and sue J.P. Morgan, which, of course, is what we did. The idea that we could piece the dots together and figure out that because this was a damage amount, which, by the way, was higher than the net losers could possibly be claiming, the class, therefore, couldn't include net winners under the original definition. If you look at the complaint, and, again, we cite it in our papers, in our briefs, there were references in the Shapiro complaint to the amount, I think at that time, that was calculated for net losers, plus other damages in unspecified amounts, and in the ad dominum and in the wherefore clauses, the net losers, the Shapiro complaint, asked for unlimited damages, as class action plaintiffs are wont to do. So it is not a correct statement to say, oh, if we had looked at that complaint, the numbers wouldn't have added up, and as I say, Judge McMahon, who was certainly closest to it, said, we've changed the definition. I'm not ruling on whether net winners were part of a claim or have a claim go out and sue J.P. Morgan separately and argue to the court that the claim was told. That court will decide it. Now, in terms of the damage issue, two things. Number one, I'm just trying to find the exact quote. Pardon me. But it's on page 8931 of the record, where the court said to Mr. Savarese, there's a difference between saying that you can't recover fictitious profits and saying that you have no damages that you can recover. And the court went on to say, at a minimum, you can recover the loss beneficial use of the money. He asked Mr. Savarese, do you have a case to the contrary? Mr. Savarese could not come up with one. And the court indicated, therefore, this would not be an appropriate 12b-6 disposition because there was a cognizable damage claim made. And lastly, or semi-lastly, if I can go over a little bit, but in addition to that part of the damage claim, I'd ask the court, I'm not going to try to read it because it's a fairly lengthy quote, look at page 19 of our reply brief, which is Mr. Sheehan, the Madoff trustee counsel, explaining to this court why net winners do have a claim and they will be able to partake of the Madoff estate once all the net winners are brought up to zero, that he is not saying net winners have no claim. It is simply a question of subordination. And, Your Honor, Judge Wesley, if I could just address your point on the merits. We don't plead simply that Chase had knowledge, although we do plead that. You will find in the complaint allegations that Chase told Madoff how to work a check-hiding scheme that he was working with a friend named Norman Levy, and also told him that that scheme has to stop after 9-11 regulators were too much on their tail. And when Chase said that, even though it was a profitable scheme for Madoff, Madoff stopped. Chase controlled his bank account. Chase lent him money. Chase could put him in prison. I think that's a pretty good indication that they had the power, actual power and exercise. I mean, you could make that argument with regard to any large depositor at the bank, that they have influence and could stop providing banking services and therefore argue that Chase is responsible for everything, for everything their depositors do. I don't see any limit. No, Your Honor, and that's certainly not my intention. The thing is here you have to couple it with knowledge that we have pled that Chase knew what was going on, and that's what Mr. Madoff says, and with the fact that they were involving themselves in these schemes, as in the case of the check-hiding scheme. They weren't simply watching it. They knew that manufacturers Hanover had kicked Madoff out actually as a depositor because he tried the same scheme there, and they saw there was no legitimate business purpose. Knowing someone's doing something like that doesn't mean that you're directing them to do it or that you're somehow in control of it. It may be a breach of fiduciary duty to other depositors if it places the bank's assets in jeopardy, but it doesn't create control personally. According to the allegations in the complaint, not only did Chase know that Madoff was doing this, they gave him tips on how to structure the deal so it would stay below the radar screen, and then they told him to stop, and Madoff stopped. They told Madoff, repay the interest you got from us on that check-hiding scheme. Madoff repaid the interest, and Chase was one of the few profiteers from the Madoff crimes. It, as I say, got half a billion dollars in fees directly and also had the beneficial use for close to 20 years of billions and billions and billions of deposits. Your Honor, that, in my experience, Ponzi people are not ill-advisory. If Chase was getting that kind of payment, there was a reason for it. Thank you. I thank the court. Thank you both. We'll reserve decision.